# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

BRYAN KISER and ELITE GYMNASTICS, INC.

CIVIL ACTION

VERSUS

23-464-SDD-SDJ

JOHNNY MOYAL, RADOSLAV STEFANOV, ELVIRA STEFANOV, and CASEY CORBAN

## <u>CORRECTED RULING</u>

This matter is before the Court on separate motions filed by each defendant. Defendant Casey Corban ("Corban") moves to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6).[1] Defendant Johnny Moyal ("Moyal") also moves to dismiss pursuant to Rule 12(b)(6) and alternatively moves for a more definite statement pursuant to Rule 12(e).[2] Defendants Radoslav Stefanov ("R. Stefanov") and Elvira Stefanov ("E. Stefanov") (collectively, "the Stefanovs") move to dismiss pursuant to Rule 12(b)(6).[3] The Stefanovs also request in their motion that this Court abstain from exercising its jurisdiction over this case, or alternatively stay the proceedings pending the resolution of an ongoing action in Louisiana state court.[4] Plaintiffs, Bryan Kiser ("Kiser") and Elite Gymnastics, Inc. ("Elite") (collectively, "Plaintiffs"), filed oppositions to each motion.[5] Moyal and the Stefanovs filed replies.[6]

---

[1] Rec. Doc. 45.
[2] Rec. Doc. 50.
[3] Rec. Doc. 56.
[4] *Id.*
[5] Rec. Docs. 49, 53, 59.
[6] Rec. Docs. 54, 63.

After careful consideration of the parties' arguments and applicable law, the Court finds that the motions should be granted in part and denied in part as set forth below.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The facts as alleged by Plaintiffs are as follows: In August of 2019, R. Stefanov approached Kiser about potentially selling to Kiser his gymnasium and attendant gymnastics operation, Elite Gymnastics, Inc. ("Elite").[7] Soon thereafter, Kiser expressed his interest in the purchase and entered into a "Confidentiality Agreement" with R. Stefanov on August 15, 2019, in connection with further discussions of the details of the potential sale.[8]

On August 29, 2019, Kiser traveled to Baton Rouge to see the gymnasium and meet with R. Stefanov to further discuss the potential purchase.[9] Moyal was also present at the meeting, and Kiser was told that "Moyal would need to sign off on anything that was going to take place because of his history, reputation, and connection to the gym."[10] The parties discussed various matters at this meeting including the estimated value of the property and gymnastics operation, coaching staff, gym culture, Moyal's "prolific background," and programs at Elite.[11] Upon learning that Elite operated a "homeschool program," Kiser asked R. Stefanov "if the program was USA Gymnastics and SafeSport compliant, as well as if they had any outstanding complaints or concerns" regarding "abuse" in any of the gym's programs.[12] Despite his inquiry, Kiser alleges that R. Stefanov and Moyal withheld pertinent information:

---

[7] Rec. Doc. 42, ¶ 9.
[8] *Id.* at ¶¶ 10, 11.
[9] *Id.* at ¶ 12.
[10] *Id.*
[11] *Id.* at ¶¶ 13, 14.
[12] *Id.* at ¶ 15.

> At no time during the August 29, 2019, meeting did [R. Stefanov] or Moyal disclose to Kiser that previous minor participants in gymnastics had made a series of good faith allegations of sexual misconduct by a previous coach, which had been reported to both of them, with a failure to report those allegations to SafeSport or USA Gymnastics, and that Moyal was aware of the alleged assaults because some took place at his residence.[13]

Kiser asked about SafeSport and USA Gymnastics compliance again at a subsequent meeting with the Stefanovs on September 7, 2019.[14] According to Kiser, no responsive information was provided.

On September 8, 2019, Kiser and R. Stefanov "agreed to a non-binding outline of a proposal to move forward with looking at how to best finalize the deal and get the 'blessing' from Moyal."[15] The proposal reflected that Kiser was to purchase "Elite, including all of its intellectual property, and the Le Bon Temps Roule meet[16] for three-hundred thousand dollars ($300,000.00). The real/immovable property, including the land and all of its improvements, was to be sold for 2.1 million dollars ($2,100,000.00)."[17]

Meanwhile, Kiser alleges that R. Stefanov and Moyal continued in their failure to disclose the existence of past sexual misconduct allegations directed at a former coach of Elite and that R. Stefanov did not report the allegations to SafeSport or USA Gymnastics.[18] Further, "Kiser asserts that if [R. Stefanov] or Moyal had disclosed any pending SafeSport complaints, or any previous complaints and allegations of child abuse or otherwise, Kiser would not have pursued the transaction."[19]

---

[13] *Id.* at ¶ 16.
[14] *Id.* at ¶ 22.
[15] *Id.* at ¶ 24.
[16] This is a gymnastics meet run by Elite.
[17] Rec. Doc. 42, ¶ 24.
[18] *Id.* at ¶ 25.
[19] *Id.* at ¶ 27.

In anticipation of the sale moving forward, and without knowledge of any sexual abuse allegations, Kiser and his wife moved from Houston, Texas, to Baton Rouge in January of 2020.[20] At this point, "[o]wnership had been turned over to Kiser pending the final drafting of paperwork," and the process of transferring Elite's assets into Kiser's name had begun.[21] "During this same period [R. Stefanov] and Moyal were actively promoting Kiser as the new owner of Elite."[22]

Kiser alleges that, in October of 2020, he learned of sexual abuse allegations connected to Elite's past: "while at Elite's facility, a victim and current employee shared with Kiser her first-hand account of sexual misconduct perpetrated by a George Walter Dean, Jr. (Dean). Dean was a former coach who had worked with Elite and Moyal."[23] At the time of the alleged abuse by Dean, "Elite was under the ownership of Moyal."[24] The victim, who was a minor at the time of the alleged abuse, told Kiser that Moyal knew of Dean's misconduct while it was ongoing and failed to report it or otherwise intervene.[25] Upon receipt of this information, "Kiser contacted legal counsel and the appropriate authorities, including USA Gymnastics and SafeSport."[26] On February 11, 2021, Dean was charged in a Bill of Information "with one (1) count of Aggravated Crime Against Nature and three (3) counts of indecent behavior with a juvenile."[27] Kiser also "urged Moyal to amicably discontinue his presence and instruction at Elite due to the credible

---

[20] *Id.* at ¶ 28.
[21] *Id.* at ¶¶ 28, 29.
[22] *Id.* at ¶ 29.
[23] *Id.* at ¶ 30.
[24] *Id.* at ¶ 35.
[25] *Id.* at ¶ 31.
[26] *Id.* at ¶ 32.
[27] *Id.* at ¶ 35.

public reports and the victim's first-hand statements."[28] Moyal refused to leave Elite, and Elite subsequently issued a "Cease-and-Desist letter" to Moyal.[29]

Later, on June 25, 2021, Moyal sued Kiser in Louisiana state court (19th Judicial District Court) for defamation and breach of contract.[30] Plaintiffs in the instant matter claim that, "[b]efore and since the filing of a lawsuit by Moyal, Moyal began interfering with Elite's business activities, committed unfair trade practices and misusing or otherwise converting Elite's name and intellectual property."[31] Plaintiffs allege that Moyal "us[ed] his influence to encourage existing students to depart from Elite."[32] Plaintiffs further allege that Moyal disparaged Kiser to Elite's coaching staff and persuaded the coaches to leave Elite.[33] Plaintiffs claim that soon thereafter, several coaches left Elite and went to work at "a new gym affiliated with Moyal."[34]

Plaintiffs also claim that Moyal prompted other coaches to "sabotage Kiser and Elite on their way out."[35] In particular, Plaintiffs allege the following with respect to Corban (a defendant in this case), who was Elite's former officer manager:

> Casey Corban, Elite's former Office Manager, prior to her termination was caught deleting customer information from Elite's records/database. After being manually removed from Elite's record keeping systems, she was allowed access under the understanding that such behavior could not continue. After her access was reinstated, she resumed the removal of customer information, downloaded sensitive and confidential records; and transmitted those records to co-conspirators. Casey Corban has been formally charged by the

---

[28] *Id.* at ¶ 33.
[29] *Id.* at ¶ 34.
[30] *Id.* at ¶ 36.
[31] *Id.* at ¶ 37.
[32] *Id.* at ¶ 40.
[33] *Id.* at ¶ 38.
[34] *Id*.
[35] *Id.* at ¶ 39.

District Attorney of the 19th Judicial District Court with Computer Tampering, in violation of La. R.S. 14:73.7(A)(3).[36]

Plaintiffs believe the former staff, including Corban, "acted in coordination and with the leading and/or assistance of Moyal."[37]

Plaintiffs further allege that Moyal used Elite's movable and intellectual property "to further his competing venture against Plaintiffs," and that Moyal disparaged Kiser and Elite throughout the Baton Rouge community.[38] Plaintiffs also claim that Moyal undertook a "coordinated effort to disrupt and usurp" Plaintiffs' hosting of the "Les Bon Temps Roule Invitational," a gymnastics meet run by Elite.[39]

According to Plaintiffs, "[a]s the gym continued to suffer due to the efforts of Moyal, Kiser sought to end any further ties to Moyal by completing the purchase of the gym from [R. Stefanov]."[40] Plaintiffs complain of the structure of the purchase agreement, explaining as follows:

> The original agreement [whereby Moyal sold Elite to R. Stefanov in 2010][41] was based upon a financed purchase between [R. Stefanov] and Moyal, where Moyal was financing the sale of the gym to [R. Stefanov], with a mortgage in favor of Moyal. In Kiser's transaction with [R. Stefanov], Kiser is making monthly payments towards the gym, while Moyal continues to hold a lien on the property, for the balance owed to Moyal by [R. Stefanov]. While trying to obtain financing for the building, lenders noticed a clause that allowed Moyal to hold his mortgage rights, demand continued monthly payments, even after the price owed by Kiser to [R. Stefanov] is paid in full. [R. Stefanov's] obligation is to hold all funds due to Moyal in escrow and continue to pay towards the balance he owes Moyal. This arrangement precludes the possibility of

---

[36] *Id.*
[37] *Id.*
[38] *Id.* at ¶¶ 41, 42.
[39] *Id.* at ¶¶ 43–46.
[40] *Id.* at ¶ 47.
[41] *See Id.* at ¶ 76.

a clear and merchantable title and thereby rendering it unsuitable collateral for a Purchase Price Mortgage.[42]

Plaintiffs allege that they made a "second attempt to exercise the option to purchase" after discovering the potential issue with obtaining clear title, and that R. Stefanov refused to act in accordance with the terms of the agreement.[43] Plaintiffs explain that, "[t]ied to a gym that is being improperly impeded by the unfair trade practices of Moyal, with a non-financeable property, and steadily declining revenue, Plaintiffs were eventually forced to suspend operations. Kiser is now in process of filing both professional and personal bankruptcy."[44]

The operative complaint outlines the following fifteen causes of action against Defendants:

- Count One: Contract Fraud against Moyal and the Stefanovs;

- Count Two: Intentional Fraudulent Misrepresentation against Moyal and the Stefanovs;

- Count Three: Negligent Misrepresentation against Moyal and the Stefanovs;

- Count Four: Detrimental Reliance against Moyal and the Stefanovs;

- Count Five: Breach of Contract against Moyal and R. Stefanov;

- Count Six: Tortious Interference with a Contract against Moyal and the Stefanovs;

- Count Seven: Unlawful Trade Practices against Moyal and the Stefanovs;

---

[42] *Id*. at ¶ 47.
[43] *Id*. at ¶ 48.
[44] *Id*. at ¶ 49. The Court notes that it is not entirely clear from a reading of the operative complaint what stage of the transaction the parties have proceeded through or exactly what the parties are contractually bound to surrounding the lease or purchase of the property.

- Count Eight: Conversion and Unjust Enrichment against Moyal and the Stefanovs;

- Count Nine: Defamation against Moyal and the Stefanovs;

- Count Ten: Breach of Fiduciary Duties and Fidelity against R. Stefanov and Corban;

- Count Eleven: Civil Conspiracy against Moyal, the Stefanovs, and Corban;

- Count Twelve: Fraud and Related Activity in Connection with Computers (in violation of 18 U.S.C. § 1030) against Corban;

- Count Thirteen: Conspiracy to Commit Fraud and Related Activity in Connection with Computers (in violation of 18 U.S.C. § 1030) against Moyal, the Stefanovs, and Corban;

- Count Fourteen: Theft of Trade Secrets (in violation of 18 U.S.C. § 1831) against Corban; and

- Count Fifteen: Conspiracy to Steal Trade Secrets (in violation of 18 U.S.C. § 1831) against Moyal, the Stefanovs, and Corban.

## II.    LAW AND ANALYSIS

### A. Preliminary Note on Subject Matter Jurisdiction

At the outset, the Court considers its jurisdiction over the subject matter of this case. The Court notes that the parties are not completely diverse because Elite, a Plaintiff, and all three Defendants are Louisiana citizens.[45] Therefore, subject matter jurisdiction in

---

[45] *Id.* at ¶¶ 1–6.

this case cannot be based on 28 U.S.C. § 1332, which requires complete diversity among the parties.[46]

Plaintiffs allege that the case presents a federal question, providing this Court with jurisdiction pursuant to 28 U.S.C. § 1331.[47] For the Court to exercise federal question subject matter jurisdiction, a claim must "aris[e] under the Constitution, laws, or treaties of the United States."[48] Plaintiffs assert the involvement of three federal statutes as follows:

> This is a claim for damages that arise out of Kiser's compliance with his duties as set forth Title 36 U.S.C. § 220541, *et seq.* Kiser was lured into a contractual commitment to purchase Elite Gymnastics, Inc. under false pretenses and once Kiser became aware of allegations implicating 36 U.S.C. § 220541, the defendants took retaliatory action that caused substantial harm to Kiser and Elite. This is also a claim for damages under the Computer Fraud and Abuse Act, 18 U.S.C. §1030 and the Protection of Trade Secrets Act, 18 U.S.C. §1836.[49]

Plaintiffs further suggest that supplemental jurisdiction exists over the remaining claims pursuant to 28 U.S.C. § 1367.[50]

The Stefanovs argue that the operative complaint's reference to 36 U.S.C. § 220541 (the "SafeSport Reporting Statue") "does not create a federal issue and does not have any bearing on the legal analysis required" because it merely outlines duties to report misconduct.[51] Nonetheless, all parties apparently agree that the causes of action brought under the Computer Fraud and Abuse Act (18 U.S.C. § 1030) and the Defend

---

[46] *See Caterpillar Inc. v. Lewis,* 519 U.S. 61, 68 (1996) (citing *Strawbridge v. Curtiss,* 3 Cranch 267, 2 L.Ed. 435 (1806)).
[47] Rec. Doc. 42, ¶ 7.
[48] 28 U.S.C. § 1331.
[49] Rec. Doc. 42, ¶ 7.
[50] *Id.*
[51] Rec. Doc. 56-1, p. 6.

Trade Secrets Act (18 U.S.C. § 1831, *et seq*.) give rise to subject matter jurisdiction based on a federal question. However, all Defendants argue that Plaintiffs' causes of action under these federal statutes should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim. Defendants further argue that after dismissing those causes of action for failure to state a claim, the Court should dismiss the remaining state-law claims for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

The Court is mindful that, generally, a Rule 12(b)(1) jurisdictional attack should be considered before addressing an attack on the merits of the complaint under Rule 12(b)(6).[52] However, under the present circumstances, the jurisdictional attack is premised upon the argument that the claims over which this Court has original jurisdiction (Counts Twelve through Fifteen) should be dismissed for failure to state a claim. Moyal and Corban argue that after the federal claims are dismissed, the Court should decline to exercise its supplemental jurisdiction over the remaining state-law claims pursuant to 28 U.S.C. § 1367(c)(3), which provides that courts may decline to exercise supplemental jurisdiction if it "has dismissed all claims over which it has original jurisdiction."

Therefore, the Court will first consider whether Counts Twelve through Fifteen state plausible claims for relief. Then, the Court will return to an analysis of its jurisdiction over whatever claims remain.

---

[52] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

### B. Motion to Dismiss Under Rule 12(b)(6)

#### 1. Legal Standard

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[53] The Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[54] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[55]

In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss: "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[56] A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[57] However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[58] In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[59] "Furthermore, while the court must accept well-

---

[53] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).
[54] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (internal citations omitted).
[55] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)).
[56] *Twombly*, 550 U.S. at 555 (2007) (internal citations and brackets omitted).
[57] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).
[58] *Id*.
[59] *Id*.

pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[60] On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[61]

### 2. Arguments and Analysis

All Defendants argue that Counts Twelve through Fifteen fail to state plausible claims. These claims assert federal causes of action under two federal statutes: the Computer Fraud and Abuse Act (CFAA) and the Defend Trade Secrets Act (DTSA).

### Computer Fraud and Abuse Act (18 U.S.C. § 1030)

"The CFAA criminalizes various fraudulent or damaging activities related to the use of computers."[62] The CFAA also authorizes civil actions for violations of the statute "if the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i)."[63] One of those factors is: "loss to 1 or more persons during any 1-year period … aggregating at least $5,000 in value."[64] Plaintiffs allege that Defendants' CFAA violations caused a loss of more than $70,000.[65] Accordingly, Plaintiffs sufficiently pleaded this threshold factor to allow a civil action.

Plaintiffs contend that Corban violated the CFAA as follows:

> Corban used her time as an employee to improperly download Elite's proprietary information, customer lists, and other confidential information, sharing those with the gym affiliated with Moyal in order to damage Plaintiff and Elite's reputation in the community and take his customer base. Upon information and belief, she also created invitations for former coaches to continue logging into the system long after their employment was over to continue viewing and downloading

---

[60] *Taha v. William Marsh Rice Univ.*, 2012 WL 1576099, at *2 (S.D. Tex. 2012) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).
[61] *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).
[62] *Fiber Sys. Int'l, Inc. v. Roehrs*, 470 F.3d 1150, 1156 (5th Cir. 2006).
[63] 18 U.S.C. § 1030(g).
[64] 18 U.S.C. § 1030(c)(4)(A)(i)(I).
[65] Rec. Doc. 42, ¶¶ 130, 135.

> Elite's proprietary information, trade secrets, and employee/volunteer work product stored on that system.[66]

Plaintiffs allege that Moyal and the Stefanovs were involved in these violations through a conspiracy with Corban.[67]

Before addressing the conspiracy allegations, the Court considers the alleged underlying violation by Corban. Plaintiffs do not specify in the operative complaint which of the several subsections of the CFAA they claim Corban violated. However, as Plaintiffs point out, the language of the allegations "substantially follow[s] the language of multiple sections of 18 U.S.C. § 1030, including § 1030(a)(4), 1030(a)(5)(A), 1030(a)(5)(B), and 1030(a)(5)(C)."[68] The first alleged violation[69] tracks the language of subsection (a)(4), which addresses a defendant who, "knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period."[70] The second alleged violation[71] tracks the language of subsection (a)(5)(A) of the statute, which addresses a defendant who "knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer."[72] The next paragraph of the operative complaint[73] follows the language of subsection (a)(5)(B), addressing a defendant who "intentionally

---

[66] Rec. Doc. 42, ¶ 124.
[67] *Id.* at ¶¶ 131–135.
[68] Rec. Doc. 59, p. 22.
[69] Rec. Doc. 42, ¶ 126.
[70] 18 U.S.C. § 1030(a)(4).
[71] Rec. Doc. 42, ¶ 127.
[72] 18 U.S.C. § 1030(a)(5)(A).
[73] Rec. Doc. 42, ¶ 128.

accesses a protected computer without authorization, and as a result of such conduct, recklessly causes damage."[74] Finally, the last alleged violation[75] follows subsection (a)(5)(C), which addresses a defendant who "intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage and loss."[76]

All Defendants argue that the claim against Corban for the underlying direct violation fails for two reasons: 1) because the computer in question is not a "protected computer" in the context of the CFAA, and 2) because the allegations are insufficient to establish that Corban accessed the computer in question "without authorization" or that she "exceeded authorized access."[77]

First, Defendants' argument that the computer in question is not a "protected computer" is rejected. The definition of that term under the CFAA includes a computer "which is used in or affecting interstate or foreign commerce or communication."[78] Interpreting that definition, the Supreme Court has stated that the directives of the CFAA requiring a "protected computer" apply "at a minimum [ ] to all information from all computers that connect to the Internet."[79] Defendants argue that Plaintiffs failed to sufficiently allege the computers were used in or affecting interstate commerce because they "clearly narrate a story that happens exclusively within the Baton Rouge area and certainly within the state of Louisiana."[80] Given the recognition that "[p]leading specific facts that the defendant accessed a computer connected to the internet is sufficient to

---

[74] 18 U.S.C. § 1030(a)(5)(B).

[75] Rec. Doc. 42, ¶ 129.

[76] 18 U.S.C. § 1030(a)(5)(C).

[77] Corban's arguments in this regard are found at Rec. Doc. 45-1, pp. 4–6. Moyal's arguments are located at Rec. Doc. 50-1, pp. 17–19. The Stefanovs adopt Corban's and Moyal's arguments as their own (Rec. Doc. 56-1, pp. 15–16).

[78] 18 U.S.C. § 1030(e)(2)(B).

[79] *Van Buren v. United States*, 593 U.S. 374, 379 (2021).

[80] Rec. Doc. 45-1, p. 7.

establish that the accessed computer was 'protected,'"[81] Defendants' argument regarding the local nature of Plaintiffs' business is unavailing. Corban's alleged conduct, including the download and transmission of information, gives rise to a common-sense inference[82] that Plaintiffs' "workplace computer was connected to the internet."[83] Accordingly, the Court finds that the operative complaint contains sufficient factual allegations to plausibly establish the involvement of a "protected computer" as defined under the CFAA.

All of the provisions of the CFAA implicated in this case include an element of some form of "authorization." The Fifth Circuit has recognized that under the CFAA, the phrase "without authorization" plainly means "without permission."[84] Thus, a person who accesses a computer "without authorization" accesses that computer itself "without any permission at all."[85] The Supreme Court has clarified that this requirement is "a gates-up-or-down inquiry—one either can or cannot access a computer system."[86] In this way, the "'without authorization' clause protects computers themselves from outside hackers."[87]

It is apparent on the face of Plaintiffs' operative complaint that Corban did not access the computer in question "without authorization." Plaintiffs allege:

> Corban, Elite's former Office Manager, prior to her termination was caught deleting customer information from Elite's records/database. After being manually removed from Elite's record keeping systems, **she was allowed access** under the understanding that such behavior could not continue. **After**

---

[81] *Complete Logistical Servs., LLC v. Rulh*, 350 F. Supp. 3d 512, 521 (E.D. La. 2018) (quoting *Merritt Hawkins & Associates v. Gresham*, 948 F.Supp.2d 671, 674 (N.D. Tex. 2013) (citing *United States v. Trotter*, 478 F.3d 918, 921 (8th Cir. 2007)).

[82] *See Iqbal,* 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief ... will require the reviewing court to draw on judicial experience and common sense.").

[83] *Gresham*, 948 F. Supp. 2d at 675. In that case, the court found that, even if the plaintiff's "clients and its other business ties are located exclusively in Texas," it was reasonable to infer that the subject computer was connected to the internet and therefore was used in or affecting interstate commerce.

[84] *United States v. Thomas*, 877 F.3d 591, 595 (5th Cir. 2017).

[85] *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1133 (9th Cir. 2009).

[86] *Van Buren*, 593 U.S. at 390.

[87] *Id.* at 375–376.

> **her access was reinstated**, she resumed the removal of customer information, downloaded sensitive and confidential records; and transmitted those records to co-conspirators.[88]

Because Plaintiffs explicitly acknowledge that Corban was "allowed access" to the subject computer, the operative complaint does not give rise to a reasonable inference that Corban accessed the computer itself "without permission." For this reason alone, Plaintiffs' claims under subsections (a)(5)(B) and (a)(5)(C) of the CFAA, which require a defendant "accesses a protected computer without authorization," fail to state plausible claims for relief.

Unlike subsections (a)(5)(B) and (a)(5)(C), subsection (a)(4) addresses not only access "without authorization," but also applies to a defendant who "exceeds authorized access" to a computer.[89] The statute provides the following definition of that term: "'exceeds authorized access' means to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter."[90]

In *Van Buren v. United States*,[91] the Supreme Court interpreted the meaning of the "exceeds authorized access" term. In that case, a police sergeant (Van Buren) used his patrol-car computer to search a law enforcement database for the license plate information of a certain person.[92] Van Buren by virtue of his position had access to the license plate database and used his valid credentials to access the information, but the search he ran on this occasion was for an improper personal purpose and was a breach

---

[88] Rec. Doc. 42, ¶ 123 (emphasis added).
[89] 18 U.S.C. § 1030(a)(4).
[90] 18 U.S.C. § 1030(e)(6).
[91] 593 U.S. 374.
[92] *Id.* at 380.

of department policy.[93] Van Buren was charged "with a felony violation of the CFAA on the ground that running the license plate for [his personal purpose] violated the 'exceeds authorized access' clause of 18 U.S.C. § 1030(a)(2)."[94]

The *Van Buren* Court analyzed in detail the proper meaning of the "exceeds authorized access" term and its statutory definition provided in subsection (e)(6). Van Buren argued that an individual using a computer that he is authorized to use only "exceeds authorized access" if he accesses an area of the computer to which he lacks access.[95] Under this view, an individual does not violate the CFAA if he obtains information from an area of the computer to which he has access, "regardless of whether he pulled the information for a prohibited purpose."[96] The Government disagreed, arguing that the term refers "to information one was not allowed to obtain *in the particular manner or circumstances in which he obtained it*."[97] Thus, in the Government's view, "an employee might lawfully pull information from Folder Y in the morning for a permissible purpose— say, to prepare for a business meeting—but unlawfully pull the same information from Folder Y in the afternoon for a prohibited purpose—say, to help draft a resume to submit to a competitor employer."[98]

The Court ruled in favor of Van Buren, holding that a person "exceeds authorized access" by obtaining "information that a person is not entitled to obtain by using a computer that he is authorized to access."[99] In other words, the clause prohibits "entering

---

[93] *Id.*
[94] *Id.* Although Plaintiffs in this case bring a claim under subsection (a)(4) rather than subsection (a)(2), both provisions include the "exceeds authorized access" term. Therefore, the Supreme Court's reasoning in *Van Buren* is apposite.
[95] *Id.* at 382–383.
[96] *Id.*
[97] *Id.* at 383 (emphasis in original).
[98] *Id.*
[99] *Id.* at 384.

a part of the system to which a computer user lacks access privileges."[100] The Court favored this interpretation because it represents a harmonious reading of the "without authorization" term and the "exceeds authorized access" term.[101] The Court found that, like the "without authorization" term, liability under the "exceeds authorized access" clause should "stem[ ] from a gates-up-or-down inquiry—one either can or cannot access a computer system, and one either can or cannot access certain areas within the system."[102] The Court expressly rejected the Government's incorporation of "purpose-based limits contained in contracts and workplace policies" into the inquiry, making clear that whether someone exceeds authorized access does not vary with such "circumstances."[103] Concluding, the Court stated: "In sum, an individual 'exceeds authorized access' when he accesses a computer with authorization but then obtains information located in particular areas of the computer—such as files, folders, or databases—that are off limits to him."[104]

The *Van Buren* decision compels dismissal of Plaintiffs' claim under subsection (a)(4) of the CFAA. The Supreme Court made clear that a person who exceeds their authorized access to a computer "obtain[s] information from particular areas in the computer—such as files, folders, or databases—to which their computer access does not extend."[105] By contrast, a person who has "improper motives for obtaining information that is otherwise available to them" does not exceed their authorized access.[106] Here, Plaintiffs specifically acknowledge that Corban was "allowed access," and that Corban's

---

[100] *Id*. at 388.
[101] *Id*.
[102] *Id*. at 391.
[103] *Id*. at 390–391.
[104] *Id*. at 396.
[105] *Id*. at 378.
[106] *Id*.

behavior occurred "after her access was reinstated."[107] Although the allegations suggest that Corban improperly used information on the computer, and that Corban may have violated the "understanding" that her improper behavior could not continue, this does not mean that she exceeded her authorized access to the computer as understood under *Van Buren*. The operative complaint does not contain any allegations that Corban "enter[ed] an area of the computer to which [her] authorization [did] not extend."[108] For this reason, Plaintiffs have failed to state a claim arising under CFAA subsection (a)(4).[109]

The remaining provision of the CFAA implicated by the operative complaint is subsection (a)(5)(A), which applies to a person who "knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer."[110] Unlike the other CFAA provisions discussed above, the "without authorization" term in subsection (a)(5)(A) "modifies damage rather than access."[111] Thus, as explained by the Fifth Circuit,

> [s]ection 1030(a)(5)(A) is the only independent "damage" provision, meaning it does not also require a lack of authorization to access the computer. *Contrast* 18 U.S.C. § 1030(a)(5)(B), (C) (both applying to damage that results from unauthorized access of a computer). It prohibits "intentionally caus[ing] damage without authorization."[112]

For this reason, Corban's authorization to access the computer does not foreclose Plaintiffs' subsection (a)(5)(A) claim. The question is whether Corban caused damage

---

[107] Rec. Doc. 42, ¶ 123.
[108] *Van Buren*, 593 U.S. at 391 (quoting *United States v. Valle*, 807 F.3d 508, 524 (2d Cir. 2015)).
[109] To the extent Plaintiffs may attempt to bring a claim under CFAA subsection (a)(2), such a claim would be dismissed for the same reason under *Van Buren*.
[110] 18 U.S.C. § 1030(a)(5)(A).
[111] *Thomas*, 877 F.3d at 596 (citing Orin S. Kerr, *Cybercrime's Scope: Interpreting "Access" and "Authorization" in Computer Misuse Statutes*, 78 N.Y.U. L. Rev. 1596, 1661 (2003)).
[112] *Id.* at 595.

without authorization, not whether Corban accessed the computer without authorization or exceeded her authorized access.

In *United States v. Thomas*, the Fifth Circuit acknowledged the "all-or-nothing" approach applicable to the CFAA's "access" provisions (i.e., subsections (a)(4), (a)(5)(B), and (a)(5)(C), discussed above), but determined that subsection (a)(5)(A) (the so-called "damage" provision) warrants a different approach.[113] The court held that subsection (a)(5)(A) "prohibits intentionally damaging a computer system *when there was no permission to engage in that particular act of damage*."[114] Here, the operative complaint alleges that Corban was specifically told that she could not engage in the complained-of conduct.[115] Defendants' arguments for dismissal only relate to Corban's authorization to access the computer and information, which is not the pertinent inquiry under subsection (a)(5)(A). Thus, Plaintiffs sufficiently alleged that Corban's particular acts (including the removal, deletion, and transmission of information) were done without permission. The remaining question is whether Corban's conduct caused "damage" to the computer system.

The CFAA defines "damage" as "any impairment to the integrity or availability of data, a program, a system, or information."[116] According to the operative complaint, Corban removed or deleted "customer information," "downloaded sensitive and confidential records," and "transmitted those records" to others.[117] As other courts have found,[118] deletion of customer information constitutes damage under the CFAA, as

---

[113] *Id.* at 596–598.
[114] *Id.* at 598 (emphasis added).
[115] Rec. Doc. 42, ¶ 123 (Plaintiffs allege an "understanding" with Corban that her "behavior could not continue.").
[116] 18 U.S.C. § 1030(e)(8).
[117] Rec. Doc. 42, ¶ 123.
[118] *See, e.g., IberiaBank v. Broussard*, 907 F.3d 826, 837 (5th Cir. 2018).

deletion impairs the "availability of data" or "information." Further, "when [ ] data is misappropriated, an impairment of its integrity occurs."[119] Thus, Plaintiffs sufficiently alleged damage.

In upholding the finding of the defendant's violation of subsection (a)(5)(A), the court in *United States v. Thomas* stated: "Thomas emphasizes the unlimited access he had to the system that gave him the ability to inflict this damage. But it is not conceivable that any employee, regardless of their level of computer access, would be authorized to cause these problems."[120] The Court finds this reasoning applicable to Plaintiffs' allegations here, and Defendants make no effective counterargument addressing the "damage without authorization" element of subsection (a)(5)(A). Accordingly, viewing the facts alleged in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have plausibly alleged that Corban "intentionally impair[ed] a computer system without permission."[121] For this reason, the operative complaint states a plausible claim for relief under subsection (a)(5)(A) of the CFAA.

Having found that Plaintiffs sufficiently pleaded a claim against Corban under CFAA subsection (a)(5)(A), the Court considers whether there are adequate allegations of a conspiracy among all Defendants to commit this violation. The CFAA provides: "Whoever conspires to commit or attempts to commit an offense under subsection (a) of this section shall be punished as provided in subsection (c) of this section."[122] Courts

---

[119] *Frisco Med. Ctr., L.L.P. v. Bledsoe*, 147 F. Supp. 3d 646, 660 (E.D. Tex. 2015) (citing *Shurgard Storage Ctr. Inc. v. Safeguard Self Storage, Inc,* 119 F.Supp.2d 1121, 1122 (N.D. Wash 2000)).

[120] *Thomas*, 877 F.3d at 598.

[121] *Id.* at 595.

[122] 18 U.S.C. § 1030(b). The Court notes some uncertainty in the case law regarding whether a civil defendant may be liable for a conspiracy under the CFAA. For example, the Western District of Texas has indicated that a civil action may be brought against a defendant who conspired to violate the CFAA (*see Hovanec v. Miller,* No. SA-17-CV-766-XR, 2018 WL 1221486, at *8 (W.D. Tex. Mar. 7, 2018)), but the

generally require that a plaintiff set forth "specific allegations of an agreement and common activities to state a conspiracy claim."[123] Thus, a conspiracy under the CFAA entails "a knowing agreement with another to commit the unlawful act."[124]

The operative complaint contains minimal factual detail regarding the alleged conspiracy amongst the Defendants to violate the CFAA. Plaintiffs generally assert that Moyal and the Stefanovs conspired to commit such violations "by directing, instructing, orchestrating, and having knowledge of the actions of Corban."[125] Other than these bare assertions, there are no factual allegations regarding the Stefanovs' involvement in Corban's conduct. Accordingly, the Court finds that Plaintiffs failed to adequately plead that the Stefanovs conspired with Corban in her alleged CFAA violations.

With respect to Moyal, Plaintiffs allege that in committing the alleged underlying acts, "it is believed that" Corban "acted in coordination and with the leading and/or assistance of Moyal."[126] The operative complaint indicates that this was one part of Moyal's broader interference with Plaintiffs' business activities, where Moyal allegedly persuaded coaches and students to leave Elite. Corban is one of the former Elite employees that Moyal allegedly prompted to "sabotage Kiser and Elite on their way out."[127] By alleging that Moyal encouraged Corban to leave Elite and prompted her to "sabotage" Elite by taking actions on its computers, the Court finds that Plaintiffs have,

---

Northern District of Georgia has suggested that a civil action under the CFAA can only be brought against the individual who committed the underlying violation of the statute (*see Agilsys, Inc. v. Hall*, 258 F. Supp. 3d 1331, 1343–1344 (N.D. Ga. 2017)). Defendants did not raise this issue, and the Court will assume for purposes of the instant ruling that a civil action may be brought for conspiracy to violate the CFAA.

[123] *NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 835 (N.D. Cal. 2014).

[124] *Trademotion, LLC v. Marketcliq, Inc.*, 857 F. Supp. 2d 1285, 1294 (M.D. Fla. 2012).

[125] Rec. Doc. 42, ¶¶ 131–134.

[126] *Id.* at ¶ 39.

[127] *Id.*

albeit not by much, pleaded adequate facts to state a plausible CFAA conspiracy claim against Moyal.

For these reasons, the Court finds that Plaintiffs' claim under only subsection (a)(5)(A) of the CFAA survives the motion to dismiss, and the CFAA conspiracy claim survives only as to Moyal and under the same subsection. Plaintiffs' claims under the "access provisions" of the CFAA (i.e., subsections (a)(4), (a)(5)(B), and (a)(5)(C)) are dismissed for failure to state a claim. Finally, the conspiracy claim against the Stefanovs is likewise dismissed under Rule 12(b)(6).

### **Defend Trade Secrets Act (18 U.S.C. § 1831, *et seq.*)**

Like the claims under the CFAA, Plaintiffs assert a direct violation of the DTSA by Corban and allege conspiracy with Moyal and the Stefanovs in connection with the violation. In alleging Corban's underlying violation, Plaintiffs rely on the same factual allegations as under the CFAA claim, asserting that Corban deleted/removed "customer information," "downloaded sensitive and confidential records," and "transmitted those records to co-conspirators."[128] Plaintiffs also claim that Corban "created invitations for former coaches to continue logging into the system," allowing access to "proprietary information" and "trade secrets."[129] Plaintiffs further allege that all Defendants "conspired to knowingly and with intent to convert a trade secret steal, misappropriate, copy, duplicate, download, upload, alter, destroy, replicate, transmit, send, deliver, mail, communicate, receive, buy, possess, or otherwise convey such information relating to

---

[128] *Id.* at ¶ 136.
[129] *Id.* at ¶ 137.

Elite by directing, instructing, orchestrating, utilizing, and having knowledge of the actions of Corban as set forth herein."[130]

The Court begins by addressing Corban's alleged underlying violation. To state a claim under the DTSA, a plaintiff must allege: "(1) the existence of a trade secret; (2) misappropriation of the trade secret by another; and (3) the trade secret's relation to a good or service used or intended for use in interstate or foreign commerce."[131]

"Trade secret" is defined under the DTSA as follows:

> (3) the term "trade secret" means all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if--
> > (A) the owner thereof has taken reasonable measures to keep such information secret; and
> > (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.[132]

Although the statutory definition is broad, "plaintiffs pursuing DTSA claims must put a finer point on their allegations."[133] "[T]o allege a trade secret, the plaintiff must 'describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in

---

[130] *Id.* at ¶ 141.
[131] *Bureau Veritas Commodities & Trade, Inc. v. Nanoo*, No. CV 20-3374, 2021 WL 5232448, at *2 (E.D. La. Nov. 10, 2021) (citing 18 U.S.C. § 1836(b)(1)) (other citations omitted).
[132] 18 U.S.C. § 1839.
[133] *Am. Biocarbon, LLC v. Keating*, No. 20-00259, 2020 WL 7264459, at *4 (M.D. La. Dec. 10, 2020).

the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies.'"[134]

Here, Plaintiffs' DTSA allegations make generic references to "customer information,"[135] "sensitive and confidential records,"[136] "proprietary information,"[137] and "employee/volunteer work product."[138] Corban argues these references are conclusory and insufficient to meet the statutory definition of a trade secret.[139] In response, Plaintiffs focus on their allegations regarding "customer information," arguing that "both Louisiana state and federal courts have routinely held that a customer list constitutes a trade secret."[140]

The Court finds that Plaintiffs have failed to sufficiently allege the existence of a trade secret. "Courts generally find that pleadings are inadequate when the alleged trade secrets are identified only by category or broad conclusory statements."[141] For example, in a case in the Northern District of California, the plaintiff alleged the existence of a trade secret as follows:

> source code, customer lists and customer related information, pricing information, vendor lists and related information, marketing plans and strategic business development initiatives, "negative knowhow" learned through the course of research and development, and other information related to the development of its price-optimization software, including ideas and plans for product enhancements [and other information not expressly covered by its patents].[142]

---

[134] *Id.* (quoting *Navigation Holdings, LLC v. Molavi*, 445 F. Supp. 3d 69, 75 (N.D. Cal. 2020)).
[135] Rec. Doc. 42, ¶ 136.
[136] *Id.*
[137] *Id.* at ¶ 137.
[138] *Id.*
[139] Rec. Doc. 45-1, p. 9.
[140] Rec. Doc. 49, p. 13.
[141] *Nanoo*, 2021 WL 5232448, at *2.
[142] *Vendavo, Inc. v. Price f(x) AG*, No. 17-CV-06930-RS, 2018 WL 1456697, at *3 (N.D. Cal. Mar. 23, 2018).

There, the court found the allegations insufficient to establish a trade secret, reasoning that the plaintiff "set out its purported trade secrets in broad, categorical terms, more descriptive of the types of information that generally *may* qualify as protectable trade secrets than as any kind of listing of particular trade secrets [the plaintiff] has a basis to believe actually were misappropriated here."[143]

Here, while it is true that courts have recognized that "customer lists *can be* considered trade secrets,"[144] more particularized allegations are required to establish that such a list actually does constitute a trade secret. Plaintiffs' "customer information" label is insufficient standing alone. The operative complaint lacks additional facts to "set the boundaries within which its trade secrets lie" or to "differentiate its alleged trade secrets from matters of general knowledge."[145]

In another similar case, the Southern District of New York dismissed a DTSA claim where the plaintiff alleged misappropriation of trade secrets consisting of "marketing information, financial information, client lists, business models, pricing formulas, customer data and social media sites, and applications with specific Universal usernames and passwords."[146] While these types of information and materials could constitute trade secrets, the court reasoned that the plaintiff did not plead sufficient particularized facts to make that determination.[147] For the same reason, Plaintiffs' allegations fall short in this case as well.

---

[143] *Id.* at *4 (emphasis in original).

[144] *Rulh*, 350 F. Supp. 3d at 518 (emphasis added).

[145] *Am. Biocarbon*, 2020 WL 7264459, at *4.

[146] *Universal Processing LLC v. Weile Zhuang*, No. 17 CV 10210-LTS, 2018 WL 4684115, at *1 (S.D.N.Y. Sept. 28, 2018).

[147] *Id.* at *3 ("While it is not necessary to disclose every detail of an alleged trade secret in a complaint, the pleading standard set forth in *Twombly* and *Iqbal* requires that the complaint allege facts sufficient to identify the information for which protection is claimed and sufficient information about its nature, value, and measures taken to safeguard it to support an inference that the information qualifies as a trade secret.").

Plaintiffs point to two cases from the Eastern District of Louisiana in which the court found that customer lists were adequately alleged to constitute trade secrets. However, the plaintiffs in those cases particularly alleged the efforts to keep the information secret and the value derived from the secrecy of the information. In *Alfasigma USA, Inc. v. EBM Medical, LLC*, the plaintiff alleged that it required the defendants to sign confidentiality agreements in an effort to keep its customer lists secret.[148] In *Complete Logistical Services, LLC v. Rulh*, the plaintiff alleged that the customer lists and other information were kept on the plaintiff's "secure and protected computer system," and that the plaintiff derived independent economic value from the confidentiality of the information.[149] By contrast, the operative complaint in this case is devoid of any facts regarding Plaintiffs' efforts to maintain the secrecy of the information or how the information derives independent value from not being generally known. The statutory definition of "trade secret" makes clear that this information is necessary.

For these reasons, Plaintiffs' "conclusory allegations fall well short of the particularity standard necessary to separate its alleged trade secret(s) from matters of general knowledge in the [ ] industry or of special persons who are skilled in the trade, and to permit Defendants 'to ascertain at least the boundaries within which the secret lies.'"[150] Accordingly, Plaintiffs have failed on this element, and the DTSA claim will be dismissed. Given the dismissal of the underlying claim against Corban, the conspiracy claim against the other Defendants is likewise dismissed.[151]

---

[148] *Alfasigma USA, Inc. v. EBM Med., LLC*, No. CV 17-7753, 2018 WL 1604961, at *3 (E.D. La. Apr. 3, 2018).

[149] *Rulh*, 350 F. Supp. 3d at 519 (E.D. La. 2018).

[150] *Am. Biocarbon*, 2020 WL 7264459, at *5 (quoting *Navigation Holdings*, 445 F. Supp. 3d at 75).

[151] The Court notes Moyal's argument that the DTSA does not create a private right of action for conspiracy to misappropriate trade secrets (Rec. Doc. 50-1, p. 20). Given the dismissal of the underlying claim against Corban, consideration of Moyal's argument is not necessary at this time.

### C.  Subject Matter Jurisdiction

As stated, Plaintiffs filed this action in federal court on the basis of federal question subject matter jurisdiction.[152] Plaintiffs point to three federal statutes in alleging this Court's jurisdiction: 1) the "SafeSport" statute (36 U.S.C. § 220541, *et seq*.); 2) the CFAA (18 U.S.C. § 1030); and 3) the DTSA (18 U.S.C. § 1831, *et seq*.).[153]

The Court finds that Plaintiffs' reference to the SafeSport statute does not give rise to a federal question. Plaintiffs allege that their damages "arise out of Kiser's compliance with his duties" set forth in the SafeSport statue.[154] However, to give rise to a federal question, the federal statute must either "create[ ] the cause of action," or the complaint must "necessarily depend[ ] on resolution of a substantial question of federal law."[155] Here, Plaintiffs only reference 36 U.S.C. § 220541 to state that Kiser "complied with his duties" under the statute. The SafeSport statute does not create Plaintiffs' cause of action, and nothing about the statute is in dispute in this case. Accordingly, the action does not "arise under" 36 U.S.C. § 220541.

The Court has determined that the DTSA claim fails and will be dismissed, but the CFAA claim under 18 U.S.C. § 1030(a)(5)(A) survives as to Corban and Moyal. Therefore, Corban's and Moyal's Rule 12(b)(1) jurisdictional argument is ineffective because it was dependent upon the dismissal of both the DTSA and CFAA actions for failure to state a claim. The CFAA claim having survived, the case involves a federal question and this Court has jurisdiction.

---

[152] Rec. Doc. 42, ¶ 7.
[153] *Id.*
[154] *Id.*
[155] *Collins v. AAA Rent All, Inc.*, 812 F. Supp. 642, 643 (M.D. La. 1993).

Other than the CFAA action, all of Plaintiffs' remaining claims are based on state law. Pursuant to 28 U.S.C. § 1367(a), courts have supplemental jurisdiction over state-law claims if they "form part of the same case or controversy" with a claim over which the court has original jurisdiction. If a court finds that it has supplemental jurisdiction under 28 U.S.C. § 1367(a), it may nonetheless decline to exercise that jurisdiction under the circumstances listed in 28 U.S.C. § 1367(c).

Defendants do not address whether the state and federal claims form part of the same case or controversy under 28 U.S.C. § 1367(a). The only Defendant who analyzed supplemental jurisdiction in any detail is Corban, but she skipped to the later step of whether the Court should decline to exercise its supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c). But the discretionary grounds for *declining* to exercise supplemental jurisdiction found in § 1367(c) are not relevant until the *existence* of jurisdiction is established pursuant to § 1367(a). In other words, § 1367(a) governs the threshold matter of whether the Court has jurisdictional at all, while § 1367(c) influences the Court's discretion to decline to exercise its jurisdiction if it does exist.

In the Court's view, by failing to address § 1367(a) at all, Corban's request for dismissal "for lack of jurisdiction pursuant to Rule 12(b)(1)"[156] is a misnomer; Corban's § 1367(c) argument is extraneous to the antecedent question of whether the Court possesses the power to hear the state-law claims because "'the [district] court's exercise of its discretion under § 1367(c) is not a jurisdictional matter.'"[157] As the Seventh Circuit worded it: "Section 1367(c), identifying criteria that influence the prudent exercise of

---

[156] Rec. Doc. 45-1, p. 10.
[157] *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 640 (2009) (quoting 16 J. Moore et al., *Moore's Federal Practice* § 106.05[4], p. 106–27 (3d ed.2009)).

discretion to resolve claims under the supplemental jurisdiction, *supposes the raw power to resolve these claims*. Adjudicatory power comes from the link between the claim creating federal jurisdiction and the pendent claims [pursuant to Section 1367(a).]"[158]

Despite Defendants' failure to address § 1367(a), the Court does so here because "federal courts are duty-bound to examine the basis of subject matter jurisdiction sua sponte."[159] And with specific regard to supplemental jurisdiction, "[a] court must satisfy itself that a claim falls within the category laid out in § 1367(a), for otherwise there is no federal jurisdiction."[160]

To "form part of the same case or controversy" under § 1367(a), "[t]he state and federal claims must arise from a common nucleus of operative fact" such that the plaintiff "would ordinarily be expected to try them all in one judicial proceeding."[161] Plaintiffs briefly address § 1367(a), broadly stating that the common nucleus of operative fact between the state and federal claims is "Corban, Moyal, and the Stefanov's (sic) misconduct."[162]

The limits of the "same case or controversy" standard are not clearly defined by the jurisprudence. Some courts within the Fifth Circuit note that the standard "is expansive, extending supplemental jurisdiction to its constitutional limit,"[163] and "[a] loose factual connection between the claims is generally sufficient."[164] On the other hand, it has also been recognized that it is unclear "how to proceed when there is some overlap, *but*

---

[158] *Myers v. Cnty. of Lake, Ind.*, 30 F.3d 847, 849 (7th Cir. 1994) (emphasis added).
[159] *Union Planters Bank Nat. Ass'n v. Salih*, 369 F.3d 457, 460 (5th Cir. 2004).
[160] *Myers*, 30 F.3d at 850.
[161] *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).
[162] Rec. Doc. 49, p. 15.
[163] *Lucarino v. Con-Dive, LLC*, No. H-09-2548, 2010 WL 786546, at *2 (S.D. Tex. Mar. 5, 2010).
[164] *CheckPoint Fluidic Sys. Int'l, Ltd. v. Guccione*, No. 10-4505, 2012 WL 195533, at *3 (E.D. La. Jan. 23, 2012).

*not a perfect factual overlap*, between the federal and state claims in question, and the Fifth Circuit does not appear to have addressed this issue head on."[165]

In this case, Plaintiffs' singular federal action under the CFAA relates to discrete conduct: Corban's alleged damaging of Elite's computer by removal, deletion, and transmission of information, and Moyal's alleged involvement by "prompting" or "leading" Corban in those actions. In the Court's view, most of Plaintiffs' state-law claims bear a tenuous relationship to the CFAA action. Specifically, the following claims were only brought against Moyal and the Stefanovs, and they have minimal factual overlap with the CFAA action:

- Count One: Contract Fraud;

- Count Two: Intentional Fraudulent Misrepresentation;

- Count Three: Negligent Misrepresentation;

- Count Four: Detrimental Reliance;

- Count Five: Breach of Contract;

- Count Eight: Conversion and Unjust Enrichment; and

- Count Nine: Defamation.

The claims listed above have little to do with Corban and Moyal's alleged scheme of illegally obtaining information on Elite's computer system. Counts One through Five involve allegations of misconduct by Moyal and the Stefanovs specifically relating to Kiser's entering into the contract to lease and/or purchase Elite.[166] Counts Eight and Nine involve Moyal and the Stefanovs' alleged stealing of Plaintiffs' gym equipment, and their

---

[165] *Banik v. Tamez*, No. 7:16-cv-00462, 2016 WL 6122729, at *6 (S.D. Tex. Oct. 20, 2016) (emphasis in original).
[166] Rec. Doc. 42, ¶¶ 50–82.

allegedly false statements that Plaintiffs had failed to make timely rent payments.[167] Both the elements for establishing these claims and the facts that would be used to do so are distinct from those of the CFAA claim. On the other hand, Counts Six, Seven, Ten, and Eleven all suggest a higher degree of factual relation to the CFAA claim because they at least reference either Corban's conduct on Elite's computers or Moyal's "encouraging" of Elite coaches to harm Plaintiffs' operations.[168]

Given the generally accepted view that a "loose factual connection" is sufficient for supplemental jurisdiction, and considering Defendants made no argument at all regarding 28 U.S.C. § 1367(a), the Court is inclined to find that supplemental jurisdiction exists over Plaintiffs' state-law claims because they all generally involve alleged wrongful acts taken against Plaintiffs in connection with the sale and operation of the gym. Nonetheless, for the reasons that follow, the Court will exercise its discretion to decline supplemental jurisdiction under 28 U.S.C. § 1367(c).

Supplemental jurisdiction is a doctrine of discretion, and the Supreme Court recognizes that it "need not be exercised in every case in which it is found to exist."[169] 28 U.S.C. § 1367(c) provides four bases for declining supplemental jurisdiction: "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."

---

[167] *Id.* at ¶¶ 103–111.
[168] *Id.* at ¶¶ 83–102, ¶¶ 112–122.
[169] *Gibbs*, 383 U.S. at 726.

Unlike most other courts, the Fifth Circuit has instructed that the § 1367(c) categories be treated as "factors" that courts should "balance" in deciding whether to decline jurisdiction.[170] Applied here, § 1367(c)(1) does not weigh heavily in favor of declining jurisdiction because Plaintiffs' state-law claims do not involve complex issues of state law. Also, § 1367(c)(3) is inapplicable altogether because the Court has not dismissed the CFAA claim, over which it has original jurisdiction.

The second basis for declining supplemental jurisdiction, provided in § 1367(c)(2), calls for consideration of whether Plaintiffs' state-law claims substantially predominate over the CFAA claim. As stated by the Supreme Court, "if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals."[171] The Court elaborated as follows: "Once it appears that a state claim constitutes the real body of a case, to which the federal claim is only an appendage, the state claim may fairly be dismissed."[172] As the Third Circuit put it, a district court should find substantial predomination "where permitting litigation of all claims in the district court can accurately be described as allowing a federal tail to wag what is in substance a state dog."[173]

The Court finds that Plaintiffs' state-law claims substantially predominate over the CFAA claim. The portion of the CFAA claim that survived Defendants' Rule 12(b)(6) motion stems from the discrete factual allegations that Corban engaged in wrongful

---

[170] *Enochs v. Lampasas Cnty.*, 641 F.3d 155, 159 (5th Cir. 2011). In that case, the dissent read § 1367(c) as providing a "list of situations in which it may be permissible for a district court to remand pendent state-law claims, and *not* a set of factors to be balanced." *Id.* at 164.

[171] *Gibbs*, 383 U.S. at 726 –727.

[172] *Id.* at 727.

[173] *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 789 (3d Cir. 1995) (interpreting *Gibbs*, 383 U.S. at 727).

conduct on Elite's computer system, and that Moyal encouraged, lead, or prompted such conduct. By contrast, the issues raised and proof required by the state-law claims are much broader, and for the most part have no relation to the CFAA allegations. To name a few, the issues raised only by the state-law claims include: whether the Stefanovs and/or Moyal failed to disclose the existence of sexual abuse allegations against a former Elite coach; whether that failure to disclose was intentional; whether they had a duty to do disclose that information; whether they intended to defraud or deceive Kiser by withholding that information; whether the Lease with Option to Purchase contract that Kiser signed impermissibly prevented Kiser from obtaining clear title to the gym and Elite; whether Moyal and/or the Stefanovs intentionally interfered with Plaintiffs' ability to host the Le Bon Temps Rouler gymnastics meet; whether Moyal and/or the Stefanovs disparaged Plaintiffs to others with the intent to disrupt their operations; whether Moyal stole gym equipment from Plaintiffs; whether the Stefanovs falsely claimed that Kiser had not been paying rent, and whether Plaintiffs were harmed by those false claims; whether the Stefanovs named their newly-opened competing gym "Elite Gymnastix, Inc." with the intent to confuse Plaintiffs' customers; and whether Moyal and/or the Stefanovs "lured Kiser into a management role at the gym, so he could insure the business and keep it operational, while deceiving Kiser as to their intention to prevent him from obtaining full tile to the gym."[174] These issues substantially predominate over the much narrower question of whether Corban and Moyal violated the CFAA.

In considering whether "other compelling reasons for declining jurisdiction" exist under § 1367(c)(4), courts look to the "common law factors [of] judicial economy,

---

[174] Rec. Doc. 42, ¶ 121.

convenience, fairness, and comity."[175] Here, judicial economy does not weigh against dismissal because a significant amount of judicial resources have not been devoted to this matter, as the case is still at the motion to dismiss stage. The Court finds that the convenience factor is neutral. The third common law factor supports declining supplemental jurisdiction because "it [is] certainly fair to have ... the purely ... state law claims heard in ... state court[.]"[176] Finally, declining supplemental jurisdiction would serve the interest of comity; as the Supreme Court noted in *Gibbs*, "needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."[177] Plaintiffs' eleven state-law claims should be resolved in state court.

In sum, the CFAA claim is merely an appendage to this predominantly state-law case. Accordingly, the Court declines to exercise supplemental jurisdiction over those claims in Counts One through Eleven of the operative complaint. The Court will maintain jurisdiction over Plaintiffs' claim under 18 U.S.C. § 1030.

### D. Abstention or Stay[178]

The Stefanovs argue that this Court should abstain from adjudicating this matter based on the *Colorado River* abstention doctrine because "[p]arallel litigation is currently ongoing in Louisiana state court in which the same parties are litigating the same general

---

[175] *Enochs*, 641 F.3d at 159 (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).

[176] *Am. Biocarbon, LLC*, 2020 WL 7264459, at *6 (quoting *Enochs*, 641 F.3d at 159).

[177] *Gibbs*, 383 U.S. at 726.

[178] The Court notes a lack of clarity in the Stefanovs' brief regarding whether their request for abstention or a stay relates to all of Plaintiffs' claims or only the breach of contract claim in Count Five of the operative complaint. However, because the Court has already declined to exercise supplemental jurisdiction over Count Five, the Court will assume that the abstention argument was meant to apply to the entire action.

issues."[179] In opposition, Plaintiffs argue that the state court suits and the instant suit are not parallel, and even assuming the suits were sufficiently parallel, the *Colorado River* factors do not support abstention.

"Generally, as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction....'"[180] "*Colorado River* abstention is a narrow exception to a federal court's 'virtually unflagging' duty to adjudicate a controversy that is properly before it."[181]

"Under the *Colorado River* doctrine, a court may abstain from a case that is part of parallel, duplicative litigation under 'exceptional circumstances.'"[182] "As a threshold matter, then, a stay of federal proceedings under *Colorado River* may only be considered when the federal and state cases are parallel, which has been interpreted to mean having the same parties and same issues."[183]  After determining that the state and federal cases are parallel, the Court must determine whether "exceptional circumstances" warrant abstention by applying the following six factors:

> (1) assumption by either court of jurisdiction over a res,
> (2) relative inconvenience of the forums,
> (3) avoidance of piecemeal litigation,
> (4) the order in which jurisdiction was obtained by the concurrent forums,

---

[179] Rec. Doc. 56-1, pp. 4–7. The Court notes that Plaintiffs point to a case where the Southern District of Texas indicated a Rule 12(b)(6) motion is not a proper procedural vehicle to argue for abstention. *See DVI Bus. Credit Corp. v. Crowder,* 193 F. Supp. 2d 1002, 1006 n.3 (S.D. Tex. 2002). However, the court allowed the argument to proceed and simply viewed the Rule 12(b)(6) motion as a motion to abstain. The Court will do the same here.

[180] *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (quoting *McClellan v. Carland*, 217 U.S. 268, 282 (1910)).

[181] *African Methodist Episcopal Church v. Lucien*, 756 F.3d 788, 797 (5th Cir. 2014) (internal citations omitted).

[182] *Saucier v. Aviva Life and Annuity Co.*, 701 F.3d 458, 462 (5th Cir. 2012).

[183] *U.S. Fire Ins. Co. v. Housing Authority of New Orleans*, 917 F.Supp.2d 581, 589 (E.D. La. 2013) (citing *Stewart v. Western Heritage Ins. Co.*, 438 F.3d 488, 491 (5th Cir. 2006)).

> (5) to what extent federal law provides the rules of decision on
> the merits, and
> (6) the adequacy of the state proceedings in protecting the
> rights of the party invoking federal jurisdiction.[184]

The Fifth Circuit instructs that these factors should be considered "with the balance heavily weighted in favor of the exercise of jurisdiction."[185]

To make the threshold determination of whether this action is parallel to the existing state court action, "a court may look both to the named parties and to the substance of the claims asserted to determine whether the state proceeding would be dispositive of a concurrent federal proceeding."[186] In other words, "[t]he requirement of 'parallel' state court proceedings implies that those proceedings are sufficiently similar to the federal proceedings to provide relief for *all* of the parties' claims."[187] The Fifth Circuit has noted that "'it may be that there need not be applied in every instance a mincing insistence on precise identity' of the parties and issues."[188] Nonetheless, "[t]he critical determination is whether the non-federal litigation will dispose of all claims raised in the federal court action."[189] "If the suits are not parallel, the federal court must exercise jurisdiction."[190]

According to the Stefanovs, there are two ongoing actions in state court: one in which R. Stefanov sued Kiser (*Stefanov v. Kiser,* 19th JDC, No. 729-831) for breach of

---

[184] *Id.* (citing *Stewart*, 438 F.3d at 491).
[185] *Stewart*, 438 F.3d at 491.
[186] *Air Evac EMS, Inc. v. Texas, Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 520 (5th Cir. 2017).
[187] *Biel v. Bekmukhamedova*, 964 F. Supp. 2d 631, 637 (E.D. La. 2013) (emphasis in original) (quoting *Intel Corp. v. Advanced Micro Devices, Inc.,* 12 F.3d 908, 913 n. 4 (9th Cir.1993)).
[188] *African Methodist*, 756 F.3d at 797 (quoting *RepublicBank Dallas Nat. Ass'n v. McIntosh*, 828 F.2d 1120, 1121 (5th Cir. 1987)).
[189] *Bar Grp., LLC v. Bus. Intelligence Advisors, Inc.*, 215 F. Supp. 3d 524, 543 (S.D. Tex. 2017) (citation omitted).
[190] *Stewart*, 438 F.3d at 491 n.3.

"the same contract that is at issue here;"[191] and another in which Moyal sued Kiser (*Moyal v. Kiser,* No. 709-054, 19th JDC) relating to "many of the same issues presented by Plaintiff's Complaint."[192] The Stefanovs argue that the state actions "would be far more appropriate forums for the resolution of Plaintiff's claims."[193] Further, although Corban is not a party to either state action, the Stefanovs argue that she could "easily be added" to those lawsuits.[194]

Plaintiffs argue that "[t]he instant matter and state court proceedings do not constitute 'parallel litigation,' which is a prerequisite to abstention or implementing a stay under *Colorado River*, because the proceedings do not involve the same parties or the same issues."[195] Specifically, Plaintiffs point out that neither Elite nor Corban is a party to either of the state court lawsuits, and the issues raised by Plaintiffs' action in this Court are broader in scope than the issues in the state court lawsuits.[196]

The Court finds that this matter is not parallel with the state court actions. As the case in this Court currently stands, the only claim remaining upon issuance of this *Ruling* is the CFAA claim. As discussed previously, the focus of the CFAA claim is Corban's alleged actions taken on Elite's computers and Moyal's alleged role in that conduct. This is not currently at issue in either of the pending state court lawsuits.[197] Corban is not even a party to the state court actions. Thus, the lawsuits do not involve "the same parties and

---

[191] Rec. Doc. 56-1, p. 2.
[192] *Id.*
[193] *Id.* at p. 4.
[194] *Id.* at p. 6.
[195] Rec. Doc. 59, p. 8.
[196] *Id.* at p. 9.
[197] Corban's conduct was mentioned in the Reconventional Demand filed by Elite in the state court lawsuit (*see* Rec. Doc. 52-3, p. 34). However, the Reconventional Demand was stricken from the record and given no effect because Elite was not a named defendant in the state action (*see* Rec. Doc. 52-4, p. 2).

the same issues,"[198] and the state litigation will not dispose of the claim that remains before this Court. Accordingly, the actions are not parallel, and this Court will retain jurisdiction over the CFAA claim.[199]

The Stefanovs alternatively argue that the Court should stay this action until the state court litigation resolves.[200] The Stefanovs primarily cite a Fifth Circuit case, *PPG Indust., Inc. v. Continental Oil Co.*,[201] to support the argument for a stay, but that case predates the *Colorado River* decision. Courts within this circuit have noted that the analysis in *PPG Indust., Inc.* of "a manifest policy against dual litigation which ... has given rise to a discretionary power in the federal courts to stay proceedings in equity suits in deference to a parallel state action" is likely outdated in light of *Colorado River*.[202] However, even assuming the applicability of *PPG Indust., Inc.*, the Court finds a stay of this matter inappropriate for the same general reasons that the abstention argument was rejected; namely, the involvement of an additional, necessary defendant (Corban) and a factually distinct claim brought under a federal statute (the CFAA). Therefore, this federal

---

[198] *Stewart*, 438 F.3d at 491.

[199] The Court also notes that, in *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 721 (1996), the Supreme Court stated that, "while we have held that federal courts may stay actions for damages based on abstention principles, we have not held that those principles support the outright dismissal or remand of damages actions." Thus, the appropriate result of abstaining in this case would be a stay rather than dismissal. *See also Carter v. H2R Rest. Holdings, LLC*, No. 3:16-CV-1554-N-BN, 2016 WL 5373487, at *4 (N.D. Tex. Sept. 2, 2016) ("Because the present action is a suit for damages, dismissal is inappropriate on Colorado River abstention grounds."); *Bollinger Shipyards, Inc. v. Chartis Specialty Ins. Co.*, No. 12-1013, 2013 WL 395475, at *5 (E.D. La. Jan. 31, 2013) (declining remand because the "action [did] not request equitable relief, but rather request[ed] damages").

[200] Rec. Doc. 56-1, pp. 5–7.

[201] 478 F.2d 674 (5th Cir.1973).

[202] *See, e.g., Byrd v. Bd. of Supervisors for the Univ. of La. Sys.*, No. CIV.A. 14–2804, 2015 WL 4253967, at *2 n. 1 (W.D.La. July 13, 2015); *Fishman Jackson PLLC v. Israely*, 180 F. Supp. 3d 476, 485 n. 6 (N.D. Tex. 2016).

action does not "serve[ ] only to duplicate the efforts of the state court since that court has all the parties and all the issues pending before it."[203]

Accordingly, the instant matter is not parallel to the ongoing state court actions, and the Stefanovs' request for abstention or a stay is denied.

### E. Moyal's Motion for More Definite Statement

Moyal moves for a more definite statement pursuant to Rule 12(e), arguing that the allegations of the operative complaint are vague and ambiguous such that "Moyal cannot reasonably be expected to respond."[204] Although Moyal requests more definite statement as to every count in the operative complaint, the Court only considers this request in connection with the CFAA claim, as this is the only claim that remains before the Court.

Rule 12(e) provides that a motion for more definite statement may be filed when "a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading[.]" The standard for evaluating a motion for more definite statement is whether the complaint "is so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it."[205]

When evaluating a motion for more definite statement, the Court must assess the complaint in light of the minimal pleading requirements of Rule 8, which provides in pertinent part: "A pleading which sets forth a claim for relief ... shall contain ... a short and

---

[203] *Hughes v. Rollins Env't Servs., Inc.*, 560 F. Supp. 9, 11 (M.D. La. 1983) (citing *PPG Indust., Inc.*, 478 F.2d 674).
[204] Rec. Doc. 50-1, pp. 23–24.
[205] *Babcock & Wilcox Co. v. McGriff, Seibels & Williams, Inc.*, 235 F.R.D. 632, 633 (E.D. La. 2006) (quoting *Advanced Communications Technologies, Inc. v. Li*, No. 05 Civ. 4628, 2005 WL 3215222, at *3 (S.D.N.Y. Nov. 30, 2005)) (citing *Bower v. Weisman*, 639 F.Supp. 532, 538 (S.D.N.Y. 1986)) (internal quotation marks omitted).

plain statement of the claim showing the pleader is entitled to relief[.]" Given the liberal pleading standard set forth in Rule 8, Rule 12(e) motions are disfavored.[206] Nevertheless, the Supreme Court has noted that "[i]f a pleading fails to specify the allegations in a manner that provides sufficient notice," then a Rule 12(e) motion may be appropriate.[207] In deciding whether to grant a Rule 12(e) motion, the trial judge is given considerable discretion.[208]

Here, the CFAA conspiracy claim against Moyal is not so vague and ambiguous that Moyal cannot reasonably prepare a response. Plaintiffs allege that Moyal prompted certain coaches, including Corban, to "sabotage Kiser and Elite on their way out,"[209] and Corban "acted in coordination and with the leading and/or assistance of Moyal" in committing the CFAA violation.[210] Although not a model of specificity, the allegations at least put Moyal on notice of the nature of the claim made against him such that he will not be prejudiced by attempting to respond. "The availability of extensive discovery is [a] factor in the disfavored status of the motion for more definite statement," and the Court finds that discovery will provide Moyal an adequate avenue for revealing more specific information regarding the CFAA conspiracy claim.[211] Accordingly, Moyal's request for a more definite statement is denied.

---

[206] *See Mitchell v. E-Z Way Towers, Inc.,* 269 F.2d 126, 132 (5th Cir. 1959); *Gibson v. Deep Delta Contractors, Inc.*, No. Civ. A. 97–3791, 2000 WL 28174, *6 (E.D. La. Jan. 14, 2000). *See also* C. Wright, et al., 5C Fed. Prac. & Proc. Civ. § 1377 (3d ed.) ("[A]s a result of the generally disfavored status of these motions, the proportion of Rule 12(e) requests granted by the district courts appears to have remained quite low.").

[207] *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002).

[208] *Newcourt Leasing Corp. v. Regional Bio–Clinical Lab, Inc.*, No. Civ. A. 99–2626, 2000 WL 134700, *1 (E.D. La. Feb. 1, 2000).

[209] Rec. Doc. 42, ¶ 39.

[210] *Id.*

[211] *Babcock*, 235 F.R.D. at 633 (citing *Gibson*, 2000 WL 28174, at *6). *See also Mitchell*, 269 F.2d at 132: "In view of the great liberality of [Rule] 8, permitting notice pleading, it is clearly the policy of the Rules that Rule 12(e) should not be used to frustrate this policy by lightly requiring a plaintiff to amend his complaint

### III.    CONCLUSION

For the reasons set forth above, Defendants' *Motions to Dismiss*[212] are GRANTED IN PART and DENIED IN PART.

Defendant Casey Corban's *Motion to Dismiss*[213] is GRANTED with respect to the DTSA claim, which is hereby dismissed without prejudice. The *Motion* is also GRANTED with respect to the CFAA claims under 18 U.S.C. §§ 1030(a)(4), (a)(5)(B), and (a)(5)(C), which claims are likewise dismissed without prejudice. The *Motion* is DENIED with respect to the CFAA claim under 18 U.S.C. § 1030(a)(5)(A) only. Corban's *Motion* for dismissal pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction is also DENIED.

Defendant Johnny Moyal's *Motion to Dismiss*[214] is GRANTED with respect to the DTSA claim, which is hereby dismissed without prejudice. The *Motion* is DENIED with respect to the CFAA conspiracy claim in connection with the underlying violation by Corban. The request for dismissal for lack of subject matter jurisdiction is also DENIED.

Defendants Radoslav and Elvira Stefanov's *Motion to Dismiss*[215] is GRANTED with respect to the claim for conspiracy to violate the CFAA, as well as the claim for a violation of the DTSA. Those claims are dismissed without prejudice. The *Motion* is DENIED with respect to the Stefanovs' requests for abstention pursuant to *Colorado*

---

which under Rule 8 is sufficient to withstand a motion to dismiss. It is to be noted that a motion for more definite statement is not to be used to assist in getting the facts in preparation for trial as such. Other rules relating to discovery, interrogatories and the like exist for this purpose."

[212] Rec. Docs. 45, 50, 56.
[213] Rec. Doc. 45.
[214] Rec. Doc. 50.
[215] Rec. Doc. 56.

*River*, a stay pursuant to *PPG Indust, Inc.*, and a more definite statement pursuant to Rule 12(e).

Further, the Court in its discretion declines to exercise supplemental subject matter jurisdiction over Plaintiffs' state-law claims in Counts One through Eleven of the operative complaint, and those claims are hereby dismissed without prejudice. For this reason, Defendants' motions to dismiss the state-law claims pursuant to Rule 12(b)(6) are DENIED as moot. The Court retains its subject matter jurisdiction over the claim under subsection (a)(5)(A) of the CFAA brought against Corban and the attendant CFAA conspiracy claim against Moyal.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this ___18th___ day of ___September___, 2024.

_Shelly D. Dick_

**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**